HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADVOCARE INTERNATIONAL, L.P., a
Texas limited partnership

                Plaintiff,

v.

RICHARD PAUL SCHECKENBACH, et al.,

                Defendants.

Case No. C08-5332 RBL

ORDER DENYING NON-PARTY
ASCENTIAL BIOSCIENCE, LLC'S
MOTION FOR PROTECTIVE ORDER

## I. INTRODUCTION

THIS MATTER is before the Court on Non-Party Ascential Bioscience, LLC's Motion for Protective Order. For the reasons discussed below, the motion is DENIED, and all requested information is discoverable for "attorneys' eyes only."

## II. BACKGROUND

In 2004 AdvoCare brought suit against Defendant Richard Scheckenbach for fraudulently funneling the supplies he sold to AdvoCare through companies he owned between 1993 and 2003. In February 2006 a judgment of more than $12 million was entered against Scheckenbach, though this was reduced on appeal to approximately $11 million plus interest. Neither Defendant Gillette nor Defendant Ascential were parties to the suit. In May 2008 AdvoCare brought this action against Scheckenbach claiming that he had fraudulently transferred assets to avoid payment of the judgment. [Complaint Dkt. # 1.] Scheckenbach

ORDER
Page - 1

claims to have no assets beyond two bank accounts totaling $500. [Scheckenbach Tr. 124:9-17.]

Carol Gillette married Scheckenbach in 1979 and they divorced in 1990 around the time Scheckenbach was being sued for sexual harassment. [Decl. of Gillette Dkt. # 27 ¶ 4; Scheckenbach Tr. 14:17-15:4.] As part of the divorce settlement, Scheckenbach transferred all interest in the couple's home to Gillette. [Scheckenbach Tr. 14:25-15:17] During the pending sexual harassment suit, Scheckenbach claims that he had no assets. *Id*.

Between 1997 and 2004, Gillette's sole employment was with Ascential or the three companies Scheckenbach was using to defraud AdvoCare. [Gillette Tr. 10:17-20.] Gillette received an unspecified salary and owned stock in two of these companies. [Gillette Tr. 21:5-22:18.] Advocare claims that this salary was merely cover for transferring large sums of money to accounts owned by Gillette. [Dkt. # 31.]

Gillette and Scheckenbach continued to live together throughout this period, and remarried on November 3, 2003 after entering into a Separate Property Agreement. [Scheckenbach Tr. 18:1-15.] The Agreement stipulated that each party's property, either from before the marriage or earned during the marriage, remained separate. [Decl. of Gillette Dkt. # 27 Ex. A.]

Gillette, her son from her first marriage Tai Brown, and her son's wife Kelly Bottolfson-Brown formed Ascential Sports Nutrition LLC (now Ascential) in 2003. [Decl. of Gillette Dkt. # 27 ¶ 9.] Ascential was capitalized in early 2005 with the help of a $5000 contribution by Scheckenbach, though he sold his interest to Gillette several months later, before any business had been conducted with third parties. [Decl. of Gillette Dkt. # 27 ¶ 10.] Although Scheckenbach no longer holds any ownership interest in Ascential, AdvoCare claims that Scheckenbach is currently responsible for developing Ascential's products. [*Id*.; Decl. of Levy Dkt. # 34 ¶8.]

Advocare, a competitor of Ascential, made numerous discovery requests of Gillette for information that Ascential and Gillette consider to be trade secrets. [Dkt. # 25.] Ascential does not object to discovery of documents relating to its financial transactions with Scheckenbach or relating to Scheckenbach's former interest in Ascential, but objects to discovery of other documents. [Dkt. # 25.] Advocare responds that discovery of all requested documents is necessary to determine if Scheckenbach used Ascential to fraudulently place his assets out of reach of the February 2006 judgment. [Dkt. # 31.] Ascential replies that Gillette and Scheckenbach have a separate property agreement and that AdvoCare is unable to establish any

transfer of assets for the purposes of avoiding the judgment. [Dkt. # 35.]

### III. DISCUSSION

**1. Standing**

AdvoCare argues that Ascential has no standing to move for a protective order because the discovery requests were made of Gillette. [Dkt. # 31.] Ascential replies that it has standing because its documents are at issue and that Gillette and Scheckenbach have joined in Ascential's motion. [Dkt. # 35.]

A party from whom discovery is sought may seek a protective order. Fed. R. Civ. Pro. 26(c)(1). Additionally, a non-party from whom discovery is sought has standing to dispute discovery requests. *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D 329, 335-36 (N.D. Cal. 1995).

No discovery requests have been served directly to Ascential. Many of the documents requested of Gillette are also Ascential's documents, however, in effect making the requests of Gillette requests of Ascential. As there is no controlling Ninth Circuit precedent on this issue, the Court finds that Ascential has standing to move for a protective order.

**2. Relevancy of AdvoCare's Requests**

Ascential argues that AdvoCare's discovery requests are overbroad and irrelevant. [Dkts. # 25, 35.] AdvoCare responds that its discovery requests are relevant and reasonably calculated to lead to admissible evidence that Gillette assisted Scheckenbach in the fraudulent transfer of his assets. [Dkt. # 31.]

Parties may discover "any non-privileged matter that is relevant to any party's claim or defense" and that information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1).

Despite earning millions of dollars between 1999 and 2003, Scheckenbach claims to have almost no assets, instead being supported by Gillette. [Decl. of Kugler Dkt. # 32 Ex. B; Scheckenbach Tr. 51:11-25.] Since 1997, Gillette has been employed only by Ascential or other companies AdvoCare has alleged Scheckenbach used for purposes of fraud. Gillette has also confirmed that she transferred substantial monies to Ascential. [Decl. of Gillette Dkt. # 27 ¶ 5.] As AdvoCare's complaint identifies Ascential as an entity through which Scheckenbach may have fraudulently transferred assets, discovery of Gillette's

documents relating to Ascential is legitimately calculated to lead to admissible evidence. [Complaint Dkt. # 1.]

**3. Requested Information as Trade Secrets**

Ascential argues that the financial documents requested by AdvoCare are protected trade secrets, and that revealing such information to a competitor would harm Ascential. [Dkts. # 25, 35.] AdvoCare responds that the financial information sought in discovery does not qualify for trade secret protection. [Dkt. # 31.]

Information must be novel to qualify for trade secret protection. *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996). Additionally, such information must derive independent economic value from the fact that it is unknown to others. *Woo v. Fireman's Fund Ins. Co.*, 137 Wn.App. 480, 154 P.3d 236 (2007); R.C.W. 19.108.010(4).

Ascential argues that there is value in the secrecy of its financial documents because those documents contain lists of vendors, manufacturers, and customers. [Dkt. # 35.] Ascential further alleges an ongoing conspiracy on behalf of AdvoCare and its attorneys to infiltrate Ascential and steal trade secrets. [*See* Decl. of Gillette Dkt. # 36.] While the requested financial information may provide some competitive advantage through its secrecy, there has been no showing that the information sought by AdvoCare is in any way novel. Ascential's financial information therefore does not qualify for trade secret protection. Furthermore, the designation of discovered information for "attorneys' eyes only" sufficiently protects Ascential from any unfair competitive advantage that could be gained by AdvoCare.

## V. CONCLUSION

Non-Party Ascential's motion for a protective order is DENIED and the requested documents will be discoverable for "attorneys' eyes only." No hearing or in camera proceeding is required.

**IT IS SO ORDERED.**

IT IS SO ORDERED this 8th day of December, 2008

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE
*digitally signed upon authorization (JAB)*